UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAULA BENNICE,

                    Plaintiff,

          -v-                              1:23-CV-666

COSMOPROF and SALLY BEAUTY
HOLDINGS, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

THE LAW OFFICE OF                    BARRY E. JANAY, ESQ.
    BARRY E. JANAY P.C.
Attorney for Plaintiff
90 Broad Street, 25th Floor
New York, NY 10004

LEWIS BRISBOIS BISGAARD              PETER T. SHAPIRO, ESQ.
    & SMITH LLP
Attorneys for Defendants
77 Water Street, Suite 2100
New York, NY 10005

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On June 2, 2023, plaintiff Paula Bennice ("Bennice" or "plaintiff") filed

this federal diversity action against defendants CosmoProf and Sally Beauty

Holdings, Inc. (collectively, "defendants") for making defamatory statements accusing her of shoplifting.  Dkt. No. 1.

On August 18, 2023, defendants moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Bennice's eight-count complaint.  Dkt. No. 7.  The motion has been fully briefed and will be considered without oral argument.  Dkt. Nos. 7-1, 10, 11.

## II. <u>BACKGROUND</u>

This dispute arises out of an alleged shoplifting incident that took place in defendants' store.[1]  Compl. ¶ 14.  In September 2022, Bennice visited her local CosmoProf store in Schenectady, New York to make various purchases before heading to her hair salon for the day.  *Id.* ¶ 30.  According to plaintiff, there was nothing remarkable about her visit and she did not have any "notable" interactions with store employees that day.  *Id.* ¶ 31.  However, later that day, an officer from the local sheriff's department ("Sheriff's Department") called plaintiff informing her that a CosmoProf store employee had called to report her for shoplifting and that she had been banned from the store.  *Id.* ¶¶ 32–33.

---

[1] Defendant Sally Beauty Holdings, Inc. operates a business segment known as Beauty Systems Group that is branded to consumers as "CosmoProf."  Therefore, the CosmoProf store that plaintiff visited in Schenectady, New York is a beauty supply store owned and operated by Sally Beauty Holdings, Inc. and CosmoProf.  *See* Defs.' Mem. at 1.

Later, when Bennice obtained a copy of the police report it stated that there was no evidence of shoplifting and that the investigation had been closed. Compl. ¶ 36. Plaintiff later contacted the CosmoProf corporate office and received an apology for the report and was assured that the incident would be investigated. *Id.* ¶ 37. However, things took a turn when plaintiff received a letter from the CosmoProf corporate office informing her that she had been banned from all CosmoProf stores in New York State due to her shoplifting. *Id.* ¶ 38.

Things only got worse. Two weeks later, Bennice's colleague, Daria Ryan ("Ryan") visited the same CosmoProf store in Schenectady, New York with her mother. Compl. ¶ 40. While attempting to make several purchases, Ryan was informed that her *own* account had been flagged for shoplifting and theft. *Id.* ¶ 43. When Ryan inquired about the flag on her account, the store employee informed her that she had been flagged because she "was associated with Bennice and . . . was likely shoplifting as well." *Id.* ¶ 44.

To rectify the situation, Bennice and Ryan called the CosmoProf corporate office together to request an investigation. Compl. ¶ 47. Later, Ryan received a call at plaintiff's salon from the Sheriff's Department informing her that plaintiff had once again been reported for shoplifting as well as harassment by defendants' employees. *Id.* ¶ 48.

Sometime after the second shoplifting report, Bennice was informed by another stylist in the community that defendants' employees had been discussing plaintiff's "frequent" shoplifting from the store loudly in front of other customers.  Compl. ¶ 53.  By early October 2022, plaintiff was still receiving reports from colleagues and clients alike that defendants' employees continued to accuse her of shoplifting in front of customers.  *Id.* ¶ 56.

According to Bennice, she has lost significant income as a result of these accusations.  Compl. ¶¶ 58–60.  Plaintiff has also needed to make frequent visits to her physician to monitor her heart condition, which she claims has been greatly exacerbated by this ordeal.  *Id.* ¶ 74.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable

inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94
(2007). In doing so, the court generally confines itself to the facts alleged in
the pleading, any documents attached to the complaint or incorporated into it
by reference, and matters of which judicial notice may be taken. *Goel v.
Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. <u>DISCUSSION</u>

Bennice's eight-count complaint contains claims for (1) defamation, (2)
defamation *per se*, (3) injury to reputation, (4) injury to business, (5)
intentional infliction of emotional distress, (6) negligent infliction of
emotional distress, (7) pain and suffering, and (8) tortious interference with
business relations. Defendants have moved to dismiss plaintiff's complaint
under Rule 12(b)(6) for failure to state any claims for which relief can be
granted. Defs.' Mem. at 1.[2]

Resolution of defendants' motion to dismiss requires some brief
housekeeping first. Upon review, the eight counts contained in the complaint
must be distilled to five. Counts I, II, and IV boil down to a single claim of
defamation and will be discussed as such. Compl. ¶¶ 92–123, 136–46. In
addition, count seven, labeled as "pain and suffering," describes a kind of

---

[2] Pagination corresponds to CM/ECF.

*damages* award corresponding to plaintiff's injuries.[3]  Accordingly Count VII will be dismissed because it does not establish a cause of action.

This leaves five claims remaining for a discussion of plausibility: (1) defamation, (2) injury to reputation, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) tortious interference with business relations.  Now, to the merits.

## A. <u>Defamation (Counts I, II, and IV)</u>

First, Bennice brings a claim for defamation.  She alleges that defendants' employees defamed her when they falsely accused her of shoplifting.[4]  Compl. ¶¶ 92–112.  Defendants argue that the statements were privileged and cannot expose defendants to liability for defamation.  Defs.' Mem. at 2–6.

Under New York law, defamation is an intentional tort defined "as the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996)

---

[3] "In New York, the term "pain and suffering" encompasses all items of general, non-pecuniary damages and includes the physical and emotional consequences of an injury." *Furey v. United States*, 458 F. Supp. 2d 48, 56 (N.D.N.Y. 2006).  By contrast, "conscious pain and suffering" is available as an independent cause of action in a wrongful death action to recover for a decedent's pain and suffering prior to their death.  *Ocasio v. City of Canadaigua*, 513 F. Supp. 3d 310, 328 (W.D.N.Y. 2021).

[4] Defendants do not dispute that they may be held liable for the alleged tortious conduct of their employees under a theory of *respondeat superior*.  *See* Defs.' Mem.  *See Carnegie v. J.P. Phillips, Inc.*, 815 N.Y.S.2d 107, 108–09 (N.Y. App. Div. 2006).

(citations omitted).  Defamation encompasses the torts of *slander* and *libel*. *Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 159, 169 (S.D.N.Y. 2023) (quoting *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). Slander refers to defamatory statements made orally, while libel refers to written statements published in traditional print media or elsewhere.  *Albert*, 239 F.3d at 265.  Plaintiff's claim deals with the former because it stems from what defendants' employees *said* about her to third parties.  Compl. ¶¶ 92– 112.

To successfully bring a claim for slander, Bennice must plausibly allege that defendants made "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se,* and (vii) not protected by privilege."  *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Albert*, 239 F.3d at 265–66).

As defendants point out, privilege can preclude civil liability for otherwise slanderous statements.  *Toker v. Pollak*, 376 N.E.2d 163, 166 (N.Y. 1978) (citations omitted) ("Public policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability

in a defamation action.").  However, not all privilege precludes liability outright.

There are two kinds of privilege.  The first kind of privilege—absolute privilege—precludes any civil liability for statements made by individuals who are "participating in the public function[,]" meaning judicial, legislative, or executive proceedings.  *Id*. at 219.  As the name suggests, absolute privilege is absolute and cannot be overcome by plaintiff.  By contrast, the second kind of privilege—qualified privilege—merely *presumes* that statements made by "a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned," including statements to law enforcement, are immune from liability.  *Id*. at 166–67 (quotation omitted); *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 344 (S.D.N.Y. 2000) (citation omitted).  That presumption, of course, may be overcome by plaintiff.

Here Bennice complains of two series of statements: those made to the Sheriff's Department and those made to customers.  Compl. ¶¶ 32–36, 44, 55, 55.  While no privilege extends to the second set of statements made to customers, a qualified privilege does extend to the statements made to the Sheriff's Department.  That is because they were statements made to law enforcement for the purpose of preventing theft in defendants' store.  *See Nevin*, 107 F. Supp. 2d at 334.

To defeat this presumption of privilege, Bennice must plausibly allege that the statements were made with malice. *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992) ("The shield provided by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with 'malice.'"). As relevant here, "malice" refers not only to the common law definition of "spite or ill will," but also the "actual malice" standard established by the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *Liberman*, 605 N.E.2d at, 349–50 (citations omitted).

Here, Bennice plausibly alleges these statements were made with actual malice. [5] Compl. ¶ 112 ("[Defendant's employees'] statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights or wellbeing."). Plaintiff further argues that as store manager(s), defendants' employees "would have known" that their accusations were false. *Id.* ¶ 116. In support of this theory, plaintiff argues in her opposition papers that defendants' employees "were in the best position to know with one hundred percent certainty whether [p]laintiff committed the alleged crime" because

---

[5] Bennice also alludes to common law malice stemming from her earlier disagreement with a CosmoProf employee over her ability to exchange a defective hairdryer. Compl. ¶¶ 22–31; *see Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 184 (2d Cir. 2000) ("Common law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote."). This argument may be critical for plaintiff because under New York law, punitive damages are only available in defamation cases where plaintiff has established *common law* malice. *Id.* (citing *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 626 N.E.2d 34, 42 (N.Y. 1993)).

they had access to security camera footage that would have confirmed or dispelled their suspicions.  Pl.'s Opp'n at 7.

Therefore, Bennice has plausibly alleged that statements made to the Sheriff's Department were made with the requisite malice and has overcome their qualified privilege.

That is not the last hurdle, however, that Bennice must clear to state a claim for slander.  That is because slander—no matter how odious—is not actionable unless Bennice plausibly alleges that she suffered special damages.[6]  *Liberman*, 605 N.E.2d at 860; *JoySuds, LLC*, --- F. Supp. 3d ----, 2023 WL 2744537, at *14 (S.D.N.Y. Mar. 31, 2023) (quoting *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015) (summary order)) (holding that plaintiffs alleging a loss of sales must "both name the individuals who ceased to be customers, or who refused to purchase, and itemize the exact damages.").

There is of course an exception to this general rule: slander *per se*.  *Id.*  A plaintiff who brings a successful claim for slander *per se* need not allege special damages to proceed with a slander claim because harm is presumed from such statements.  *Celle*, 209 F.3d at 179 (quotation omitted).  "The four established exceptions (collectively "slander *per se*") consist of statements (i)

---

[6] Special damages refer to "the loss of something having economic or pecuniary value." *Id.* (citation omitted).

charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business, or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman*, 80 N.E.2d at 347–48.

Bennice advances two theories of defamation *per se*. First, she claims that defendants' statements accusing her of shoplifting harmed her business, thus falling under the "trade, business, or profession" exception. Compl. ¶¶ 118, 141. However, statements that fall under this exception must "be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." *Liberman*, 80 N.E.2d at 348. Plaintiff does not allege that the statements accused her of dishonest business practices such as stealing from her *clients*, but that she had allegedly stolen from *defendants*.

Therefore, Bennice has not plausibly alleged that defendants' statements concerned matters that affected her fitness to continue operating a hair salon and do not trigger the "trade, business, or profession" exception.

Next, Bennice contends that she was defamed *per se* when defendants' employees accused her of shoplifting; thereby, accusing her of a serious crime. But does shoplifting constitute a "serious crime" as required under this exception? This question requires careful analysis because not all accusations of criminal activity will trigger the "serious crime" exception. *See*

*e.g.*, *Whelan v. Cuomo*, 198 N.Y.S.3d 739, 743 (N.Y. App. Div. 2023) (citing N.Y. PENAL LAW §§ 140.05, 240.26) (concluding that defendant's accusation that plaintiff committed trespass and harassment did not fall under the exception because these crimes are considered only minor offenses under the New York Penal Law).

In a recent decision by the Southern District of New York, adopting Magistrate Judge Moses's Report and Recommendation ("R&R"), Judge Daniels recognized the availability the "serious crime" exception where the plaintiff had been accused of shoplifting. *Azzarmi v. Key Food Stores Coop. Inc.*, 2022 WL 884973, at * 3 (S.D.N.Y. Mar. 25, 2022). In her R&R, Magistrate Judge Moses concluded that because shoplifting, or "petit larceny," is classified as a Class A misdemeanor in New York, accusations of shoplifting do fall under the "serious crime" exception. *Azzarmi v. Key Food Stores Coop. Inc.*, 2021 WL 8013811, at * 13 (S.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 884973, at * 3 (S.D.N.Y. Mar. 25, 2022). Judge Moses was persuaded by the breadth of New York caselaw finding allegations of theft triggered the "serious crime" exception. *Id.* ("[B]oth state and federal courts in New York have permitted defamatory *per se* claims to proceed based on generic allegations of 'theft.'"); *see e.g.*, *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275–76 (S.D.N.Y. 2013) (holding that plaintiff plausibly alleged slander *per se* where he was accused by his former

employer of stealing from the cash register and employee tip jar); *Epifani v. Johnson*, 882 N.Y.S.2d 224, 235 (N.Y. App. Div. 2009) (concluding that defendant's accusation that plaintiff stole from him constituted "an allegation of a serious crime").

Measured against this standard, Bennice has plausibly alleged that defendants' employees' statements accusing her of a serious crime constitute slander *per se*. Therefore, plaintiff has plausibly alleged a claim for defamation on this basis alone.[7] Accordingly, defendants' motion to dismiss plaintiff's Counts I, II, and IV must be denied.

### B. Injury to Reputation (Count III)

Second, Bennice asserts a claim for "injury to reputation" premised on the First Department's opinion in *Singer v. Jeffries & Co.*, 563 N.Y.S.2d 346 (N.Y. App. Div. 1990). Defendants contend that New York law does not recognize a stand-alone claim for injury to reputation. Defs.' Mem. at 7–8 (quoting *Cohen v. Avande, Inc.*, 874 F. Supp. 2d 315, 325–26 (S.D.N.Y. 2012)). Upon review, defendants are correct.

In *Singer*, the First Department recognized plaintiff's claim for "injury to reputation," holding that he had demonstrated that defendants had committed an intentional tort even though his claim did not fit squarely

---

[7] Should plaintiff wish to develop her claim for special damages stemming from defendants' statements in discovery she may do so.

within the definition of recognized state-law torts such as defamation. *Singer*, 563 N.Y.S.2d at 218. The First Department concluded that plaintiff's case should proceed to trial because "[a]s a matter of policy, justice and fairness, plaintiff should not be precluded from having his day in court simply because the hornbook index does not list the tortious acts herein involved." *Singer v. Jefferies & Co.*, 553 N.Y.S.2d 346, 348–49 (1990) (citing *Gale v. Ryan*, 31 N.Y.S.2d 732 (N.Y. App. Div. 1941)).

Yet, in the thirty-plus years since *Singer* was decided, neither the Court of Appeals nor the First Department's sister appellate courts have adopted its holding. *See Balderman v. Am. Broad. Cos.*, 738 N.Y.S.2d 462, 479 (N.Y. App. Div. 2002) (dismissing plaintiff's claim for "injury to reputation" citing *Singer* as duplicative of his defamation cause of action). Further, even assuming the availability of this cause of action under New York law, the facts of *Singer* do not avail Bennice. The interests in public policy, justice, and fairness are not similarly at stake here. That is because, unlike Singer, plaintiff has an actionable defamation claim. *See supra*.

Thus, there is no obvious reason to fashion plaintiff's well-pled defamation claim into an amorphous tort claim with questionable footing in New York law. Accordingly, Count III must be dismissed.

**C. <u>Intentional Infliction of Emotional Distress (Count V)</u>**

Third, Bennice brings a claim for intentional infliction of emotional distress ("IIED").  Compl. ¶¶ 148–54.  Defendants argue that the tortious conduct plaintiff claims she suffered does not rise to the level of outrageousness necessary to support this kind of claim.  Defs.' Mem. at 8.

"To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).

"The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Howell*, 612 N.E.2d at 702 (1993) (citation omitted).  Even "false accusations of criminal conduct, or conduct that society deems reprehensible, do not *inherently* establish IIED." *Truman v. Brown*, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020) (emphasis added).  Nonetheless, New York courts have sustained IIED claims where the plaintiff suffers "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 828–29 (2d Cir. 1999) (collecting cases).

Here, Bennice's IIED claim arises from defendants' employees' statements to third-parties accusing her of shoplifting.  Compl. ¶ 148.  Defendants' employees' not only accused plaintiff of committing a serious crime, *see supra*, but subjected her to public humiliation.  *Id.* ¶ 55–56, 99.  In addition to her reputational injuries, plaintiff has also suffered a loss of employment due to these accusations.[8]  *Id.* ¶ 64–69.  Plaintiff has also plausibly alleged that defendants' employees intended to cause her severe emotional distress and that her emotional injuries a direct result of their conduct.  *Id.* 151–53.   In sum, defendants' employees intended to publicly humiliate plaintiff for her alleged shoplifting and caused her to suffer immense emotional distress as a result.

Therefore, Bennice has plausibly alleged a claim for IIED grounded in sufficiently outrageous conduct.  Accordingly, defendants' motion to dismiss Count V must be denied.

### D. Negligent Infliction of Emotional Distress (Count VI)

Fourth, Bennice brings a claim for negligent infliction of emotional distress ("NIED").  Compl. ¶¶ 156–65.  Defendants argue that this claim

---

[8] Bennice claims that she was let go by another salon after being publicly accused of shoplifting. While plaintiff states that the reason for given for her termination was simply a lack of business need, she goes on to detail her suspicion that this reason was pretextual for the real concern over being associated with a suspected thief.  Compl. ¶ 68.

must be dismissed because plaintiff has failed to identify a specific duty of care that defendants owed her.  Defs.' Mem. at 10.

NIED claims may be brought under either a "bystander theory" or "direct duty theory."  *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Under the "direct duty theory" plaintiff must plausibly allege that defendants (1) owed plaintiff a specific duty of care, (2) breached that duty, (3) unreasonably endangered her safety, and (4) caused her to suffer an emotional injury as a result.  *Id.*  As relevant here, plaintiff must identify a specific duty of care that defendants owed her, and "not some amorphous, free-floating duty to society."  *Mortise*, 102 F.3d at 696.

Bennice has advanced a "direct duty" theory of liability.  Plaintiff alleges that she was a customer of defendants' store when she suffered a NIED.[9]  As a customer, or business invitee, plaintiff was owed a specific duty of care requiring defendants to warn her of dangers that are known of, or reasonably

---

[9] While Bennice's complaint describes that some of these statements were made to customers when plaintiff was not present in the store, she has alleged more than enough facts at the pre-answer stage to make it plausible that she was injured by defendants while she was on the premises as an invitee.

should be known of on the premises.[10]  *Haefeli v. Woodrich Eng'r Co.*, 175 N.E. 123, 125 (N.Y. 1931).  Plaintiff goes on to allege that defendants' employees slandered her with knowledge that she suffered from a heart condition and that stress resulting from those slanderous statements would exacerbate her condition.  Compl. ¶¶ 160–63.  Plaintiff further alleges that she suffered severe emotional distress as a direct result of defendants' employees' conduct.  *Id.* ¶ 164.

Therefore, Bennice has plausibly alleged a NIED claim.  Accordingly, defendants' motion to dismiss Count VI claim must be denied.

### E. <u>Tortious Interference with Business Relations (Count VIII)</u>

Fifth, Bennice brings a claim for tortious interference with business relations.  Compl. ¶¶ 172–77.  Defendants argue that plaintiff fails to plausibly allege that they interfered with any identifiable prospective business relations, nor that they used improper means to do so.  Defs.' Mem. at 10–13.

---

[10] While a line of federal cases has defined a specific duty as one owed *exclusively* to the plaintiff and concluded that the duty of care owed to business invitees is not sufficiently specific, New York caselaw does not take such a narrow view and has found the duty owed to invitees sufficiently specific.  *Compare Druschke v. Banana Republic Inc.*, 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005) (dismissing plaintiff's NIED premised on duty of care owed to business invitees), *with Martirano v. Marriott Int'l, Inc.*, 196 N.Y.S.3d 623, 629–31 (N.Y. App. Div. 2023) (concluding that defendant owed plaintiff a specific duty where it is owed to a "much more limited group than the general public."), *and Cabrera v. Rallye Motors, LLC*, 185 N.Y.S.3d 697, 698–99 (N.Y. App. Div. 2023) (finding a specific duty of care was owed to car dealership patrons).

To state a claim for tortious interference with business relations under New York law, Bennice must plausibly allege that she "(1) had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182, 818 N.E.2d 1100 (2004).

As relevant here, "improper means" refers to conduct that is unlawful and "more culpable," such as conduct that is itself independently tortious. *Carvel Corp.*, 818 N.E.2d at 362–63. The Court of Appeals explained that under its previous decision in *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 664 N.E.2d 492 (N.Y. 1996), that to bring a claim for tortious interference with business relations

> the plaintiff must show that defendant's conduct was not "lawful" but "more culpable." The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations.

*Id.* Thus, actions such as slandering a plaintiff would certainly suffice. *Id.*

Here, Bennice alleges that defendants were aware of her status as a local hair salon owner with local clientele.[11]  Next, plaintiff alleges that defendants engaged in "improper means" of interfering with her prospective business relations when they slandered her—a tortious act itself.  Compl. ¶¶ 174–75. Finally, plaintiff alleges that she suffered a decrease in overall profits from her business of approximately 80% because of defendants' tortious actions. *Id.* ¶¶ 58, 176.

Therefore, Bennice has plausibly alleged a claim for tortious interference with business relations.  Accordingly, defendants' motion to dismiss Count VIII must be denied.

## V.  **CONCLUSION**

In sum, Bennice has plausibly alleged claims for defamation (Counts I, II, and IV), IIED (Count V), NIED (Count VI), and tortious interference with business relations (Count VIII) stemming from defendants' employees' shoplifting accusations.  However, plaintiff has not pled plausible separate claims for injury to reputation (Count III) or pain and suffering (Count VII).

Therefore, it is

---

[11] As stated in Bennice's complaint, defendants were aware of plaintiff's status as a local cosmetologist by nature of her patronage at their store.  *See* Compl. ¶ 16 ("In order to purchase products from any CosmoProf location, a customer must provide proof of their active license and register an account, which is accessible by all stores and includes purchase history, contact information, frequently purchased products, and other customer-specific information.")

ORDERED that

1. Defendants' motion to dismiss Count III and VII is GRANTED;

2. Defendants' motion to dismiss Counts I, II, IV, V, VI, and VIII is

   DENIED; and

3. Defendants are directed to file their ANSWER to Counts I, II, IV, V, VI,

   and VIII on or before February 22, 2024.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  February 8, 2024
        Utica, New York.