UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAULA BENNICE,

Plaintiff,

-v- 1:23-CV-666 (DNH/PJE)

COSMOPROF and SALLY
BEAUTY HOLDINGS, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| THE LAW OFFICE OF<br>BARRY E. JANAY, P.C.<br>Attorneys for Plaintiff<br>90 Broad Street, 25th Floor<br>New York, New York 10004 | ANDREW L. ZEITZ, ESQ.<br>BARRY E. JANAY, ESQ. |
| LEWIS BRISBOIS BISGAARD<br>& SMITH LLP<br>Attorneys for Defendants<br>140 Broadway, Suite 3100<br>New York, New York 10005 | PETER T. SHAPIRO, ESQ.<br>ERIN CAIN, ESQ. |
| JACKSON LEWIS P.C.<br>Attorneys for Defendants<br>58 South Service Road, Suite 250<br>Melville, New York 11747 | DANIEL R. AXELROD, ESQ. |

DAVID N. HURD
United States District Judge

# DECISION and ORDER

## I. INTRODUCTION

On June 2, 2023, plaintiff Paula Bennice ("Bennice") filed an eight-count federal diversity action against defendants CosmoProf and Sally Beauty Holdings, Inc. ("SBHI") (collectively, "defendants") arising from accusations of shoplifting made by defendants' employees. Dkt. No. 1. Plaintiff's complaint contained claims for (1) defamation, (2) defamation *per se*, (3) injury to reputation, (4) injury to business, (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) pain and suffering, and (8) tortious interference with business relations. *Id.*

On August 15, 2023, defendants moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 7. Plaintiff opposed. Dkt. No. 10. On February 8, 2024, this Court issued a Decision & Order granting in part and denying in part the defendants' motion. Dkt. No. 12. Following this ruling, plaintiff's injury to reputation and pain and suffering claims were dismissed. *See id.* And plaintiff's defamation, defamation *per se*, and injury to business claims were consolidated into a single defamation claim. *Id.* at 5. Accordingly, plaintiff was permitted to proceed as to her claims for (1) defamation, (2) intentional infliction of emotional distress ("IIED"), (3) negligent infliction of emotional

distress ("NIED"), and (4) tortious interference with business relations were plausibly alleged and permitted to proceed. *Id.*

Thereafter, on February 22, 2024, the defendants filed their respective answers, and the parties proceeded to discovery, which has since concluded. Dkt. Nos. 16–17; Text Minute Entry, Dkt. No. 52. On March 23, 2026, defendants moved for summary judgment pursuant to Rule 56. Dkt. No. 56. Notably, plaintiff did not file an opposition to defendants' motion. Defendants' motion has been fully briefed and will be considered on the basis of the submissions and without oral argument. *Id.*

## II. BACKGROUND

The following section was developed from a review and comparison of the defendants' Local Rule 56.1 statement along with the underlying records. Defs.' Facts, Dkt. No. 56-10; *see generally* Dkt. No. 56.

According to the defendants, non-party Beauty Systems Group LLC ("BSG") is a network of stores, sales consultants, and websites selling "exclusive professional products" to licensed beauty professionals for the purpose of use and resale in salons. Defs.' Facts ¶ 1. And as relevant here, they assert that BSG, not defendant SBHI, owns and operates a store under the name CosmoProf in Schenectady, New York (the "Store") and that any employees at this Store were solely employed by BSG. Defs.' Facts ¶ 3.

As relevant here, Bennice operated a beauty salon at Rotterdam Square Mall in Schenectady, New York called Lavish and, as a result, routinely purchased beauty supplies from the Store. Defs' Facts ¶ 4; Bennice Dep., Dkt. No. 56-4 at 8:6–8:14, 10:24–11:14.[1] According to the defendants, Store employees Elizabeth Berrian ("Berrian") and Sarah Hilton ("Hilton") reported that they more than once observed plaintiff steal items from the Store. Defs.' Facts ¶ 5. Hilton was a part-time employee of BSG assigned to work at the Store while Berrian was the Store Manager. Defs.' Facts ¶ 6. Defendants contend that a customer informed Store employees that she observed plaintiff "attempting to shoplift." Defs.' Facts ¶ 7. On October 27, 2022, Hilton contacted the Rotterdam Police Department ("RPD") regarding Bennice's shoplifting. Defs.' Facts ¶ 8; October 27, 2022 Police Report, Dkt. No. 56-7 at 2–3. According to the police report that was prepared following this incident (the "October Report"), Hilton told RPD that: (1) Bennice was a frequent customer and "believed to be a frequent shoplifter as well"; (2) the Store "does not have cameras or any means of observing the shoppers other than mirrors on the ceilings"; (3) she believed she observed plaintiff taking hair color from the racks that day but "could not confirm this"; (4) after speaking with her manager, she sought to have plaintiff advised that she is

[1] Pagination corresponds to CM/ECF headers.

no longer welcome at the Store. *See* October Report. The October Report also indicates that RPD would attempt to contact plaintiff by phone and that Hilton was advised to contact RPD immediately if plaintiff returned to the Store. *Id.* at 3.

According to plaintiff, Hilton did not say anything to her while she was in the Store on October 27, 2022. Defs.' Facts ¶ 9; Bennice Dep., 15:15–15:18. But plaintiff did receive a phone call from the RPD later that day advising her that she had been banned from the Store for shoplifting. Defs.' Facts ¶¶ 10–11; Bennice Dep. 15:19–16:14. Defendants contend they reported plaintiff's conduct to RPD "to avoid having their business financially impacted due to the theft of merchandise." Defs.' Facts ¶ 14.

On November 30, 2022, another alleged interaction between plaintiff and Hilton occurred yielding a second police report (the "November Report") from the RPD. Defs.' Facts ¶ 17; November Report, Dkt. No. 56-8. According to this report, Hilton asked RPD to contact plaintiff and request that she stop calling the Store. November Report at 3. When RPD contacted Bennice, she denied having called the Store that day given she had a pending lawsuit against them which precluded contacting them. *Id.* The November Report concluded that "[n]o further action [w]as needed." *Id.* After plaintiff was contacted by RPD, any calls she may have made to the Store ceased. Defs.' Facts ¶ 21.

When plaintiff went to the Store to purchase beauty products for use at her salon, she was regularly accompanied by one of her Lavish employees, Darya Ryan ("Ryan"). Defs.' Facts ¶ 22. According to the defendants, in an effort to prevent plaintiff from sending Lavish employees to the Store in light of her ban, Ryan was also "flagged" in the Store's computer system. *Id.* ¶ 23. As relevant here, in addition to working at the Store, Hilton also worked part-time at Blush Salon ("Blush"), which was a rival of plaintiff's business. Defs.' Facts ¶ 24. Relatedly, plaintiff and Ryan each testified to hearing from other individuals that Blush's owner, Amy Kretzler, wanted to harm Lavish and even "enlisted a manager named Liz to bad-mouth [Bennice] by making negative statements about [her] skill as a hairdresser, including that she had damaged customer's hair." Defs.' Facts ¶ 25; Ryan Dep., Dkt. No. 56-5 at 17:3–18:11; Bennice Dep. at 25:19–27:9.

## III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir.

2023) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017)).

A fact is "material" where it "might affect the outcome of the suit under the governing law." *Hilton v. Wright*, 928 F. Supp. 2d 530, 544 (N.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In reviewing the motion, the district court must 'draw all reasonable inferences against the party whose motion is under consideration.'" *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 215 (N.D.N.Y. 2024) (quoting *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022)). But "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant[s]." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

After a moving party carries its burden under Rule 56(c), its opponent then "must provide more than conclusory allegations … and show more than some metaphysical doubt as to the material facts." *See Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 85 (2d Cir. 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 20210)). Instead, "[t]he non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Murrell v. Moscicki*, 790 F. Supp. 3d 213, 220 (W.D.N.Y. 2025) (quoting

*Brown v. Eli Lilly & Co.*, 654 F.4d 347, 358 (3d Cir. 2011)). "Indeed, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Campbell v. Belgard*, 765 F. Supp. 3d 234, 241 (W.D.N.Y. 2025) (quoting *Anderson*, 477 U.S. at 247–48).

"In sum, the ultimate test 'is whether the evidence can reasonably support a verdict in plaintiff's favor.'" *Waltman v. United Servs., Inc.*, 635 F. Supp. 3d 86, 98–99 (D. Conn. 2022) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Waltman*, 635 F. Supp. 3d at 99 (quoting *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015)).

Finally, and as relevant to this action, the failure to respond to a motion for summary judgment "does not justify a default judgment[.]" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). "[E]ven where a non-moving party fails to respond to a motion for summary judgment, a court may not grant the motion without first examining the moving party's submission to determine if it has met the burden of demonstrating that no material issue of fact remains for trial." *Id.* at 109–10 (quoting *Vt. Teddy Bear Co., v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). Accordingly, "[i]f the

evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *Id.* at 110 (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244) (emphasis in original). Thus, "[e]ven unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996)) (cleaned up).

## IV. DISCUSSION

Bennice brings claims against the defendants for (1) defamation, (2) IIED, (3) NIED, and (4) tortious interference with business relations. Dkt. No. 1. Defendants now move for summary judgment, arguing that: (1) plaintiff has not offered facts to hold defendant SBHI liable because the Store was owned and operated by BSG; (2) plaintiff's defamation claims should be dismissed because she failed to show defendants made any statements to her customers or anyone else and the entirety of her defamation claims rely on inadmissible hearsay; (3) plaintiff's IIED claim should be dismissed because it is subsumed by other tort claims, she fails to identify any conduct by defendants intended to cause her emotional distress, and has not presented any medical evidence to corroborate this claim; (4) plaintiff's NIED claim must be dismissed because it is duplicative of her defamation claim, she has

not shown that she was subjected to extreme and outrageous conduct beyond the bounds of decency, and she has not produced any expert medical testimony in support; and (5) plaintiff's tortious interference claim fails because she has not presented evidence to support any element of that claim. Defs.' Mem., Dkt. No. 56-9 at 6–23.

**A. Housekeeping Matters**

Before discussing the merits of the case, the Court must first address a procedural deficiency contained in defendants' motion. In support of their motion, defendants rely on the deposition testimonies of plaintiff and her employee Ryan as well as two police reports from the RPD. The motion also relies upon a declaration from BSG District Manager Nicole Phillips ("Phillips"). Indeed, the defendants' Statement of Material Facts relies heavily, if not primarily, on the Phillips declaration. But there is a procedural defect with this filing—the declaration states only that it is made "pursuant to 28 U.S.C. § 1746" but makes no express mention that it was made under penalties of perjury.

However, 28 U.S.C. § 1746 ("§ 1746") "provides that an unsworn matter may be treated as sworn, provided that it is 'prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially the ... form' of the model declaration provided." *O'Neil v.*

*Hamilton College*, 2026 WL 1705939, at *5 (N.D.N.Y. June 12, 2026) (quoting *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (per curiam) (quoting § 1746 (emphasis in original) (cleaned up).

"'Parsing the declaration provided in the statute reveals its substantive elements: the declarant must (1) declare (or certify, verify, or state), (2) under penalty of perjury, (3) that the matter sworn to is true and correct." *O'Neil*, 2026 WL 1705939, at *5 (quoting *In re World Trade Center Disaster Site Litig.*, 722 F.3d at 488. Even the mere substitution of "subject to punishment" for "under penalty of perjury" has been held to be a "substantial departure" from the intended substance of the declaration as set forth in § 1746 and fails to comport with the statute. *Id.*; *see also Davis v. Grant*, 2019 WL 498277 at *1, n.2 (S.D.N.Y. Feb. 8, 2019) ("The Second Circuit has held that the absence of the 'under the penalty of perjury' language constitutes a substantial departure from § 1746."); *see also LeBouef, Lamb, Greene, & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (reversing summary judgment granted to plaintiff where district court excluded defendant's unsworn letter which "substantially" complied with the requirements of § 1746, because it included the language "[u]nder penalty of perjury, I make the statements contained herein," and was signed and dated, even though it did not include language that the contents of the letter were "true and correct"); *Stair v. Calhoun*, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015)

(finding that *pro se* plaintiff's unsworn declaration that did not include the language "true under penalty of perjury" did not meet the requirements of § 1746 because "[i]nclusion of the language 'under penalty of perjury' is an integral requirement of the statute.") (cleaned up); *Ed-George v. Burns*, 2009 WL 2957796, at *2 (N.D.N.Y. Sept. 8, 2009) (finding that although § 1746 "requires only that a declaration [ ] 'substantially'" conform with its requirements, the words "under penalty of perjury" are "expressly required" because without them "it is far from clear to the court that [the] [p]laintiff fully appreciates the consequences, or is impressed with the solemnity of his declaration") (cleaned up).

Given that the Phillips declaration fails to make any mention of the penalties of perjury which are "integral" to and expressly required by the statute, it will not be considered for the purposes of adjudicating the present motion.

**B. Plaintiff's Claims against SBHI**

As an initial matter, defendants seek dismissal of all claims against SBHI, arguing that this defendant neither owned nor operated the Store because it was owned by non-party BSG. Defs.' Mem at 6. But defendants' arguments in support of this claim rely nearly entirely on the Phillips declaration. Absent any admissible evidence clarifying SBHI's relationship

with the Store was insofar as it is relevant to this action, defendants' request to dismiss all claims against SBHI on this basis will be denied.

**C. Bennice's Defamation Claims**

Next, defendants seek the dismissal of plaintiff's defamation claims. Bennice's defamation claims are premised on defendants' employees, Hilton and Berrian, making false accusations that she shoplifted from the Store which ultimately damaged her business and reputation. Dkt. No. 1. Plaintiff contends that Hilton and Berrian falsely reported her to RPD and that Hilton, who worked part-time for a rival salon of plaintiff's, subsequently spread rumors to Bennice's rival businesses which ultimately caused her professional and reputational harm. *Id.* Bennice also argues that when Berrian and Hilton, acting on behalf of the defendants, reported her to RPD for shoplifting, they lodged a false report which also constitutes defamation.

While plaintiff's complaint alleges defamation through both the defendants' contacts with both her customers and the RPD, defendants argue that plaintiff was unable to identify any communications that the Store's employees had with any party aside from the RPD. Defs.' Mem. at 7. Further, they point out that plaintiff testified to not having direct knowledge of any defamatory statements made by either the defendants or anyone else and could only testify to what she heard from others. *Id.* Accordingly, defendants contend that plaintiff's defamation claims rely entirely on

inadmissible hearsay and must be dismissed at this juncture. *Id.* Further, defendants argue that any statements they made to RPD were true and based on a good faith belief that plaintiff was shoplifting. *Id.* at 8. Moreover, they contend those statements were both privileged and made without malice. *Id.* at 8–12.

Defamation "is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001). Defamation in the form of spoken words constitutes slander. *Id.* Under New York Law, the elements of a cause of action for slander are: (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) "of and concerning" the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander pe se, and (7) not protected by privilege. *Id.* at 265–66. Notably, "[w]hen challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was made." *Id.* at 266 (collecting cases).

And with respect to defendants' claim that any statements their employees made to the RPD were privileged, "Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether[.] The "common interest" qualified privilege protects

communications "made by one person to another upon a subject in which both have an interest." *Morris v. N.Y.S. Police*, 268 F. Supp. 3d 342, 369 (N.D.N.Y. 2017) (quoting *Chao v. Mt. Sinar Hosp.*, 476 F. App'x 892, 894–5 (2d Cir. 2012) (summary order); *Liberman*, 605 N.E. 2d at 349. The privilege is permissible where the "flow of information between persons sharing a common interest should not be impeded." *Liberman*, 605 N.E. 2d at 349.

Upon review, the defendants have not presented any admissible evidence to refute plaintiff's defamation claim beyond plaintiff's own deposition testimony. Even so, having reviewed this testimony, the Court notes that plaintiff, when asked whether she was aware if any Store employees told anyone outside of the company, aside from RPD, that she had shoplifted, replied that she was not. Bennice Dep. at 87:2–17. And while plaintiff did testify that she believed Hilton told Kretzler she had shoplifted from the Store, she testified she could only guess who told her that this occurred. *Id*. at 85:7–13; 86:5–87:8. Defendants contend that they have presented evidence showing that "BSG (undisputably) had a good faith basis to believe [p]laintiff had shoplifted based on the personal observations of two store employees, and acted reasonably, properly, and without ill will to protect its business from a shoplifter by reporting the conduct to the [RPD]." Defs.' Mem. at 11. Thus, while the only evidence defendants have presented to support this assertion is the Phillips declaration, which will not be

considered for the reasons set forth *supra*, plaintiff still cannot rely solely on hearsay evidence in the face of defendants' summary judgment motion. *Albert*, 239 F.3d at 266. And with respect to plaintiff's claims that defendants' employees contacts with the RPD were defamatory, while much of the evidence in support of defendants' arguments is found in the Phillips declaration, the Court finds that a review of the October and November reports makes clear that this is the very sort of communication the common interest privilege aims to protect. In light of this, plaintiff's defamation claims cannot survive summary judgment and must be dismissed.

**D. Plaintiff's IIED and NIED Claims**

Next, defendants seek the dismissal of plaintiff's IIED and NIED claims. Defs.' Mem at 12–20. Broadly stated, plaintiff's claims are premised on her having being subjected to defamatory statements by the defendants and that defendants did either with the full knowledge of, or a complete disregard to, the likelihood that this would cause severe emotional distress. Dkt. No. 1. Bennice claims that when the Store employees made public statements that she shoplifted, that Berrian knew plaintiff had a pre-existing heart condition, and either knowingly or negligently caused her stress and mental anguish at the risk of exacerbating that health condition. *Id.*

Defendants contend that plaintiff's IIED claim must be dismissed because: (1) plaintiff's claim is subsumed by her other tort claims, *i.e.*, her

defamation claims; (2) she has not identified any conduct by defendants that is sufficiently outrageous to support an IIED action; and (3) Bennice has not offered any medical evidence to support her claims of emotional distress. Defs.' Mem at 12–17. Similarly, with regard to plaintiff's NIED claim, defendants argue that plaintiff has not: (1) demonstrated any extreme and outrageous conduct by the defendants; (2) produced any medical evidence; (3) provided any evidence to demonstrate that defendants owed a specific duty of care to her; and (4) shown that her physical safety was ever endangered. *Id.* at 17–20

In New York, plaintiffs bringing IIED claims "must demonstrate '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 213 (E.D.N.Y. 2014) (quoting *Bender v. N.Y.C.,* 78 F.3d 787, 790 (2d Cir.1996)); *Howell v. N.Y. Post Co.,* 612 N.E.2d 699, 702 (1993). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* Accordingly, the alleged conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985); *Fischer v. Maloney,* 373

N.E.2d 1215, 1217 (1978). Fourth, claims of severe emotional distress "must be supported by medical evidence." *Id.* (internal citations omitted).

And "[t]o plead a [NIED] claim under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378, 389 (N.D.N.Y. 2021) (quoting *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)).

Moreover "NIED and IIED claims are not allowed if essentially duplicative of another cause of action." *Estate of JLA v. Fike*, 2025 WL 3132302, at *11 (N.D.N.Y. Nov. 10, 2025) (quoting *Wright v. Belafonte*, 687 F. App'x 1, 2 (2d Cir. 2017) (cleaned up). A claim can be considered duplicative where the "[p]laintiff does not provide any argument as to why the claim is distinct[.]" *Id.* (quoting *Buoniello v. Ethicon Women's Health & Urology*, 2020 WL 5802276, at *4 (E.D.N.Y. Sept. 29, 2020); *Woods v. Szakacs*, 2017 WL 11567918, at *1–*2 (N.D.N.Y. May 25, 2017). And "[o]ther courts in this Circuit have granted summary judgment to IIED and NIED defendants where the challenged conduct "and any resulting emotional damage [were] entirely subsumed by" other claims. *Id.* (collecting cases). Absent "'allegations of injuries that may not be redressed' through [p]laintiff's other

asserted causes of action, […] IIED and NIED claims are duplicative and should not be dismissed." *Id.* (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 316 (S.D.N.Y. 2016). And as relevant here, "New York law considers claims sounding in tort to be defamation claims … where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. And Fin. Mkts. Ass'n*, 2009 WK

Defendants' argument that plaintiff's IIED claim must be dismissed because it fails to identify any sufficiently outrageous conduct by the defendant will be rejected. While the defendants contend that there is "irrefutable evidence that BSG was motivated by a good faith desire to protect the business against theft and to enable its employees to do their work without having to deal with repeated harassing phone calls[,]" that assertion is derived entirely from the Phillips declaration. Defs.' Mem. at 14 (citing Phillips Decl. ¶¶ 17, 21). Accordingly, defendants have failed to meet their burden of showing that plaintiff's IIED claim fails on this basis.

Even so, plaintiff's NIED and IIED claims still fail on multiple fronts. Most notably, plaintiff has failed to provide any medical evidence in support of either claim or file an opposition addressing that deficiency in any respect, a vital requirement for her claims to survive at this juncture. Put simply,

there is nothing in the record to indicate that plaintiff suffered any physical harm as a result of defendants' purported conduct. Further, plaintiff's IIED and NIED claims arise from the same challenged conduct as her defamation claim, *i.e.*, statements made by the defendants and/or its employees that plaintiff contends were untrue and caused her to suffer emotional harm. Indeed, all of plaintiff's alleged injuries flow from her allegations that the defendants made statements to third parties that she shoplifted. Finally, plaintiff's claims that defendants' employees defamed her by making statements to outside parties aside from the RPD relies entirely on hearsay evidence that cannot support her claims of suffering professional and reputational harm. Accordingly, plaintiff's IIED and NIED claims will be dismissed.

**E. Tortious Interference with Business Claims**

Finally, defendants seek the dismissal of Bennice's tortious interference with business relations claim. Broadly stated, Bennice contends that, due to the alleged defamatory statements of Hilton and Berrian, she suffered "significant financial damage to her business, complete destruction of her business and professional reputation, and direct and indirect interference with potential business opportunity." Dkt. No. 1. Defendants contend that this claim must be dismissed because plaintiff has not presented any evidence to show communications between anyone defendants and/or

their employees and any third parties, *e.g.* customers of plaintiff. Moreover, defendants contend that plaintiff cannot prove that they were aware of plaintiff's business relationships with her customers or that defendants conduct "extinguished those relationships"

"Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 275 (N.D.N.Y. 2016) (quoting *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 177 (W.D.N.Y. 2003)); *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 207 F.3d 368, 382 (2d Cir. 2000)).

Defendants' motion largely focuses on the third element—that the defendants acted with the sole purpose of harming plaintiff or used inappropriate means to affect a business relationship. With respect to their contacts with the RPD, defendants contend those communications were made solely for the purpose of stopping shoplifting and harassing phone calls which interfered with the Store's business. Defs.' Mem. at 22. But much like with plaintiffs' defamation claim, the record evidence, *i.e.*, the two police reports submitted as evidence by the defendants, shows only that the defendants

made reports of shoplifting activity and requested that further phone calls from plaintiff be prevented. And plaintiff has introduced no evidence into the record to refute this. Moreover, defendants' arguments about why plaintiff's defamation claims fail also apply here. Because plaintiff failed to show, without relying entirely on inadmissible hearsay evidence, that the defendants' employees told others about her shoplifting, she cannot demonstrate that they acted either for the sole purpose of harming her business or otherwise used improper means. Put simply, without the defendants' declaration, they have presented little evidence to meet their burden on this motion. Nonetheless, the Court finds that their arguments that plaintiff has relied solely on hearsay evidence to claim that the defendants' employees defamed her by speaking to parties aside from the RPD are sufficient to meet that burden as to this claim. Accordingly, plaintiff's tortious interference with business relations claim will be dismissed.

## V. CONCLUSION

Despite the deficiencies with defendants' declaration in support of their motion, the Court nonetheless finds that they have met their burden of showing that plaintiff's defamation claims do not rely upon admissible evidence and must be dismissed. Bennice's IIED and NIED claims suffer from similar deficiencies: she has presented no medical evidence to support

either claim and they are duplicative of her defamation claims. Accordingly, they will also be dismissed. Finally, plaintiff's tortious interference with business relations claim will be dismissed because plaintiff has not set forth any admissible evidence to suggest the defendants acted with the sole purpose of harming her or that they otherwise used improper means to affect her business relations.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 56) is GRANTED;

2. The Clerk of the Court is directed to terminate the pending motion (Dkt. No. 56), enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: October 23, 2026
Utica, New York.